UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Angelika P., for herself and as
guardian and next friend of N.P.,
an incapacitated adult,
     Plaintiffs

     v.                                    Case No. 19-cv-1114-SM
                                           Opinion No. 2021 DNH 140
Town of Meredith,
     Defendant


**O R D E R**


     The issues raised in the legal memoranda filed in support

of and in opposition to summary judgment give rise to nuanced

questions of law and fact.  Having considered the matter in some

depth, the court is of the view that oral argument would be

helpful in determining whether some facts are potentially

material, and if so, whether a genuine dispute exists with

respect to those facts.  Resolution of the pending motion,

either as it currently stands or as supplemented, will likely

resolve the case, either because plaintiff cannot state a valid

ADA claim, or, because defendant is plainly liable under the ADA

for disability discrimination.

     For counsels' convenience and consideration in preparing

for a hearing, they are referred to the following law review

article, which, while dated, fairly outlines the split in legal

1

authority applicable in this case: Timmons, "Accommodating Misconduct Under the Americans With Disabilities Act," 57 Fla. L. Rev. 187 (2005). The court anticipates productive argument related to the following specific matters, and any related questions that counsel might deem significant. Counsel are urged to confer before the hearing and endeavor in good faith to stipulate to identified (and related) factual matters about which there is no genuine dispute.

1. Did the Town decision makers assess the threatening words N.P. reportedly used in an effort to gauge whether those words constituted either a "serious" or a "credible" threat (or both)? Is there evidence in this record of that assessment and the conclusion(s) drawn?

2. Did the Town decision makers know, or should they have known, that N.P. uttered identical, similar, or analogous threatening words during his previous camp sessions, as Angelika P. contends?

3. Did the Town, in past camp sessions, effectively modify its camp program in a way that tolerated or responded differently to similar utterances by N.P. in light of N.P.'s developmental and intellectual disabilities? That is, were means other than suspension/dismissal used to correct or mitigate the

2

potential effects of such conduct in prior camp sessions?  Is there record evidence of such action, in addition to statements to that effect by Angelika P.?  If such action was taken, was it sufficient, from the Town's perspective, to permit N.P.'s continued participation?  If such modifications were made and were sufficient, was Angelika P. advised at any time before N.P.'s suspension/dismissal at issue here that such modifications to the camp program would no longer be implemented?

4.   Did the Town decision makers assess the seriousness or credibility of the threat represented by the words reportedly uttered by N.P. in the context of his alleged six-year-old intellectual and emotional developmental level?

5.   Did the Town decision makers assess the seriousness or credibility of the threat represented by the words reportedly uttered by N.P. in the context of his biological age or his physical size?

6.   Have other campers in the program, aged six, or approximately aged five to ten years, and who were not intellectually or developmentally disabled, uttered words that were identical to, similar, or analogous to

those reportedly uttered by N.P.?  If so, were similar sanctions imposed?

7.    Is it necessary for a jury to first determine whether the Town decision makers (or a "reasonable person") could have fairly concluded that the words reportedly uttered by N.P. amounted, in context, to an actual threat (as opposed to, say, typical childish banter, such as "I'll kill you [sibling] if you tell Mom I ate the cookie!"), before it can be determined as a matter of law whether N.P. could have been suspended/dismissed from the program without violating the provisions of the ADA?  If so, is summary judgment then necessarily precluded by the existence of a genuine dispute as to a material fact?

8.    Is it necessary for a jury to first determine whether the Town decision makers (or a "reasonable person"} could have fairly concluded that the words reportedly uttered by N.P. constituted a serious, or credible, or serious and credible threat, before it can be determined whether N.P. could have been suspended/dismissed from the program for uttering those words, without violating the provisions of the ADA?

9. On this record, can the court find, as a matter of law, that, in context, no reasonable person could have fairly concluded that the words uttered by a long-time camper in the Town's program, with known intellectual and developmental disabilities, and a developmental age of approximately six years, constituted either an actual threat, or a serious and/or credible threat, comparable to those threats made by employees described in case precedent in some jurisdictions that recognize the distinction under the ADA between discipline imposed for "making a threat" and discipline imposed for "posing a threat?" That is, even if the Town could suspend/dismiss a camper for "making" a threat without considering whether the camper "poses a threat" under the ADA, to avoid liability under the ADA, must the alleged threat actually constitute a "threat" and not amount to a mere six-year-old's childish emotional outburst? Relatedly, is N.P.'s developmental age or biological age the controlling factor? Would such a finding necessarily preclude summary judgment for the Town and entitle plaintiff to summary judgment?

10. Is the Town asserting the defense that N.P. posed a "direct threat" within the meaning of the ADA? Did

the Town decision makers assess that asserted threat by considering the factors outlined in the regulations implementing the ADA? Or, is the Town relying exclusively on the "made a threat" ground rather than the "posed a threat" ground to justify its imposition of discipline?

11. The Rehabilitation Act arguments are unclear, or, perhaps better put, the bases for those arguments are unclear. Does the plaintiff dispute the fact that the so-called "Fire Act Grant" provided the Town with federal funds earmarked for and exclusively used by the Town to acquire a fire truck for the Town's Fire Department? Are the grant's terms disputed? (Neither party filed the grant as an exhibit, but presumably its terms are not the subject of any material factual dispute.)

The trial date currently scheduled in this case is continued. Trial will be rescheduled, if necessary, after the pending dispositive motion is resolved. Anticipating that all material facts are, in the end, unlikely to be genuinely disputed, this case appears to be one that can be resolved by applying the pertinent law, as it is determined to be, to those undisputed material facts. It may be, however, that the record is insufficiently developed to permit summary disposition, but

6

that additional discovery could prove useful in resolving any assertions of a genuine dispute regarding a material fact.

The clerk will schedule oral argument on the pending motion for summary judgment as the docket allows, preferably in the last week of September, 2021.  Counsel should confer with each other and then Deputy Clerk Wagner to schedule a convenient time if the proposed scheduling is not convenient.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 2, 2021

cc:  Sheila O'Leary Zakre, Esq.
     Dona Feeney, Esq.